ters alleged by petitioners against the sole surviving testamentary trustee do not seem to require special mention.

It appears to me that the remedy of the petitioners, if they have other or any sufficient grounds for a new trustee, would be one made to a court of competent jurisdiction to remove the sole surviving trustee and for the appointment of a new trustee who should be indifferent to all the cestuis que trustent. In such a proceeding a proper inquiry could be made by the court as to the truth of the allegations and answers.

I have not examined the point of merger as affecting the sole surviving trustee's trusts for her own benefit, as it was not mentioned in the papers or by counsel, nor was it made the ground of argument. I am satisfied on the showing made before me that I am bound to deny the prayer of the petition, and it will be so decreed.

Settle order accordingly.

(80 Misc. Rep. 628.)

In re SMITH.

(Surrogate's Court, New York County.  May 14, 1913.)

1. DEPOSITIONS (§ 44*)—SETTLEMENT OF INTERROGATORIES—"PERTINENT"—"RELEVANT."

Under Code Civ. Proc. § 892, providing that either party must be allowed to insert in a deposition to be taken without the state any proposed question pertinent to the issue, pertinent questions must be allowed by the judge or surrogate on the settlement of the interrogatories, provided the parties insist, and it is error to allow interrogatories that are not pertinent or relevant to the issues; "pertinent" and "relevant" interrogatories being in the same class.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 65, 66; Dec. Dig. § 44.*

For other definitions, see Words and Phrases, vol. 7, p. 6062.]

2. DEPOSITIONS (§ 46*)—SETTLEMENT OF INTERROGATORIES FINALITY OF SURROGATE'S RULING.

In view of Code Civ. Proc. § 911, providing that a deposition, unless suppressed, may be read in evidence by either party, and that objection to the competency or credibility of a witness may be made as if the witness was being personally examined, the surrogate's ruling on the settlement of interrogatories as to their pertinency is not final, but is reversible by the trial judge.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 68–71; Dec. Dig. § 46.*]

3. DEPOSITIONS (§ 46*)—OBJECTION—TIME FOR OBJECTION.

All objections to the interrogatories in a deposition to be taken without the state, except pertinency, including the competency or materiality of the evidence elicited, should be reserved for the trial, when the evidence comes to be offered and the interrogatories are sought to be read in evidence.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 68–71; Dec. Dig. § 46.*]

4. DEPOSITIONS (§ 45*)—PERSONS ENTITLED TO HAVE DEPOSITIONS TAKEN.

In the settlement of the account of a widow as administratrix of the estate of her deceased husband, where the half of the estate not passing to her under the statute of distribution was claimed both by the brother

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the intestate and by her infant daughter, claiming as an .adopted daughter of the intestate under an adoption in Germany, and where the single issue for trial was the status of the infant daughter, who was represented by guardian, and the validity of the German adoption, the administratrix had no legal interest in the controversy, entitling her to propound cross-interrogatories for a deposition addressed to the German judge in whose court the adoption proceeding was had.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. § 67; Dec. Dig. § 45.*]

In the matter of the settlement of the account of Elly Smith, as administratrix of Lucius Hopkins Smith, deceased. Settlement of interrogatories to be annexed to letters rogatory to take the testimony of the Right Honorable Judge of the Royal District Court in Berlin, Prussia, pursuant to Code Civ. Proc. § 913. Interrogatories allowed, and cross-interrogatories disallowed.

See, also, 79 Misc. Rep. 77, 139 N. Y. Supp. 522.

Merrill & Rogers, of New York City (Payson Merrill, of New York City, of counsel), for Sidney A. Smith.

Martin J. Keogh, Jr., of New Rochelle, special guardian for Ruth Hopkins Smith, an infant.

Bernard Gordon, of New York City, for administratrix.

FOWLER, S. In this matter two persons are claiming the one-half of the estate of the intestate which does not, under the statute of distribution, pass to the intestate's widow, who is the administratrix herein. The counterclaimants are the brother of the intestate and Ruth Hopkins Smith, claiming to have been adopted in Germany by the intestate. If the German adoption is regular and valid, the adopted daughter will exclude the brother. The brother denies the validity and regularity of the adoption of Ruth Hopkins Smith, and letters rogatory have at his instance been directed to issue out of this court to take testimony of the very eminent judicial officer who in Germany sanctioned or authorized the adoption in question. The brother of intestate, who claims that such adoption in Germany was in some way illegal or irregular, now exhibits and propounds interrogatories for settlement. The adopted child insists upon the regularity of the adoption, and exhibits and propounds cross-interrogatories. The administratrix, who is the mother of the infant, exhibits and propounds other cross-interrogatories to be administered to the judge in question. These interrogatories and cross-interrogatories are now presented· for settlement to the surrogate, pursuant to section 892 of the Code of Civil Procedure. Many objections are taken and interposed· to the various interrogatories and cross-interrogatories. The effect of section 892 on the power of the surrogate at this stage of the cause to disallow interrogatories pertinent to the issue is first much insisted on by counsel for the brother of intestate.

The history of commissions to take the testimony of witnesses not produced in court is brief and illuminating. The practice of taking depositions of witnesses probatio in perpetuam rei memoriam, was long recognized in the canon-law courts and in chancery, being taken over

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from the civil law. But it was not so in the common-law courts. In trials at law all testimonial evidence must have been taken in court viva voce (1 Dunlap's N. Y. Supreme Ct. Practice, 541; Caine's Practice, 394), unless the parties consented in writing, or unless some statute intervened, or equity supplemented the deficiency. At common law the depositions taken in chancery de bene esse, if the witness was cross-examined or opportunity given for cross-examination, might, however, be read on the trial of an action at law under circumstances unnecessary to detail. Mr. Caine in his New York Practice of 1801, and Mr. Dunlap in his Work on the Practice of the Supreme Court of this State, published in 1821 (founded, if I remember aright, on the English Treatise by Mr. Tidd), failed to notice that there was a mode of securing depositions in chancery for use in courts of law prior to the statute of 1789. Mr. Dunlap attributes our practice of commissions to take the testimony of witnesses wholly to the operation of the New York statutes, which I am about to notice. 1 Dunlap's Practice, 541. Yet, I may add, the old chancery books and old practice books fully disclose the equity practice I have mentioned, and generally they refer to the use of such depositions in the common-law courts in proper cases. See Buller's Nisi Prius, 229, 239; Taylor on Ev. § 543. But I need not pursue this point at this time.

Prior to the statute, to which I shall refer, the common-law courts would generally coerce the parties and stay the action at law unless the parties consented to a commission to take the testimony. The statute no doubt is the sole authority for commissions issued in invitum under the Code or in actions at law. Such commissions, when issued, formerly stayed the actions automatically where there was an affidavit of merits, unless there was an unreasonable delay in going to trial, when a rule nisi to proceed or for judgment even might issue. I should remark in justice to Mr. Dunlap that it was unnecessary for him to refer to the chancery practice before 1789, as there was a statute soon passed in this state to perpetuate independently of chancery the testimony of witnesses in certain cases. 1 R. L. 455.

I must notice in passing that there was a very early decision in this state, prior to the statute of 1789, granting a commission in an action at law. Concklin v. Hart, Cole's Rep. 69. But this decision was questioned by Mr. Caine in his practice. The rules and practice of the early courts of New York prior to the present state government are still most important at times. It is much to be regretted that the excellent decisions of our colonial courts were never published in this state, as were the decisions in the colonial courts of Virginia and Massachusetts. The New York decisions, many of great weight, reach back to 1691 at law, and 1684 in chancery, and such a publication would throw much light on certain practice questions, as well as on certain local deviations from common-law rules, both substantive and adjective. These deviations have often great importance on the later substantive and adjective law of this ancient and great state. If we remember that the judicial establishment of this state antedates the whole modern law of England, and even the completion of the English canon of equity, the juridical importance of early doctrines and of our domestic decisions must be obvious to every lawyer.

The first New York statute which I have found relative to commissions to take the depositions of witnesses residing out of this state is the "Act for the Further Amendment of the Law" (chapter 28, § 4, Laws of 1789; 2 J. & V. p. 437). It was applicable to proceedings in all courts of the state. The old reports of New York are full of cases on this statute, re-enacted in 1801 (1 K. & R. 351, § 14), and again in 1813 (1 R. L. p. 519, § 11). It was this last act which was revised in the Revised Statutes of 1830 (2 R. S. 393, 394, §§. 11, 16). From the Revised Statutes, with some few changes, the legislation was next transferred to the Code of Civil Procedure, where it now is. Thus it is apparent that our present practice proceeds from the statute of 1789, and possibly from a date even earlier. From the general course of legislation in this state we might suspect that the act of 1789 was in turn founded on an earlier colonial statute, or else on an English statute enacted posterior to the reign of Charles II. But I have not had time to pursue the history of this particular legislation farther back than the year 1789; nor is it necessary that I should. The point here is that, if the procedure on commissions to take testimony is wholly statutory in this state, it must be followed closely, or the depositions, taken under the act, are imperiled by any departure. This fact gives rise to the apparent anxiety of the several parties to this important controversy.

It was under the old acts of this state, after 1789, the custom of counsel to stipulate in writing that all questions as to the competency or materiality of the evidence taken by commissioners on interrogatories should be reserved for the trial. Formerly the leading nisi prius lawyers always apparently took this course prior to the Revised Statutes of 1830. This was due to what lawyers then called the "urbanity of the profession." See Caine's Practice, 431. In the absence of such written stipulation, the weight of authority then was that the proper place to object to the form of the question or interrogatory, or to relevancy, materiality, or competency of the evidence sought, was on the trial, when the commission was returned and the deposition allowed to be read in evidence. But in the year 1826, in Francis v. Ocean Ins. Co., 6 Cow. 404, the Supreme Court gave a construction to the statute which was, to say the least, disturbing. In that case it was held that after formal allowance of the interrogatories certain objections came too late.

This ruling gave rise to a new and stricter practice on the settlement of interrogatories, and then the difficulty was that the court might prematurely exclude pertinent evidence. This latest difficulty caused the revisers of the Revised Statutes to make it mandatory on the court to allow on the settlement any question pertinent to the cause. 2 R. S. p. 394, § 15 (see revisers' note to same). Prior to the Revised Statutes all objections to the interrogatories might be taken at the trial after return of the commission. The interrogatory was first read on the trial, and then all objections noted and passed on, as in the case of viva voce testimony. Under the Revised Statutes all objections to the deposition, except pertinency, might be raised as before the Revised Statutes when the deposition came to be read in evidence. Wil-

liams v. Eldridge, 1 Hill, 249; Walton v. Godwin, 54 Hun, 387, 7 N. Y. Supp. 926; Wilcox v. Dodge, 6 N. Y. Supp. 368; Wanamaker v. Megraw, 168 N. Y. 125, 61 N. E. 112. The Code has not changed this rule.

[1] That since the Revised Statutes pertinent questions must now be allowed by a judge on the settlement of the interrogatories there is no room for doubt. See section 892, C. C. P.; Wanamaker v. Megraw, 168 N. Y. 125, 131, 61 N. E. 112; Wilcox v. Dodge, 6 N. Y. Supp. 368; Uline v. N. Y. C. & H. R. R. R., 79 N. Y. 175, 53 Am. Rep. 123, note; Walton v. Godwin, 54 Hun, 387, 7 N. Y. Supp. 926; Hemenway v. Knudson, 21 N. Y. Supp. 679.[1] The statutory direction to this effect gave rise to a minor rule. That it is now error on the settlement to allow interrogatories which are not pertinent has lately been affirmed by the Appellate Division of the First Department (Jan., 1913) in Zeggio v. Robinson, 139 N. Y. Supp. 1070, as is apparent to me from the MS. copy of the opinion, with which I am favored. The same thing was held in Walton v. Godwin, 54 Hun, 387, 7 N. Y. Supp. 926, except that the ruling extended to relevant questions. Dent v. Society of Friars, etc., 16 N. Y. Supp. 684.[2] Consequently I must not allow on the settlement interrogatories which are plainly directed to eliciting testimony which is not pertinent, or as said in Walton v. Godwin and Dent v. Society of Friars, which is not relevant to the issues. Thus "pertinent" and "relevant" interrogatories are now placed in the same class, and on the settlement of the interrogatories the pertinency and the relevancy of interrogatories must be passed on by me, provided the parties insist. That pertinency and relevancy are the same thing I should have thought doubtful, had it not been for the decision referred to; but this consideration is no longer open to the surrogate, in view of the decision mentioned. But I am inclined to think that the term "relevancy," in the decision mentioned, is used as the equivalent of "pertinency," and was not intended to extend the operation of the Revised Statutes.

[2] That the surrogate's ruling on the settlement of the interrogatories, as to their pertinency, is final, and may not be reversed on the trial by the trial judge, I deny. The conduct of a trial at law is left, by the common law, to the trial judge, and no interference with his constitutional functions and duties in respect of the evidence adduced on the trial can be tolerated, at least by mere implication. The Code itself seems explicit on this point. Section 911, C. C. P. But were it not for that provision, also taken out of the Revised Statutes, the rule on this head must have been the same by the common law.

[3] That all other objections to the interrogatories except pertinency (and perhaps relevancy equivalent to pertinency) may and should be reserved for the trial seems to me clear. This has long been the practice of this court, and there is very good reason for continuing the

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 67 Hun, 648.

[2] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 62 Hun, 620.

practice and for reserving all other objections until the trial. The trial is the best time and place for passing on the testimonial evidence offered. Section 911, C. C. Pro.; Wilcox v. Dodge, 6 N. Y. Supp. 368; Walton v. Godwin, 54 Hun, 387, 7 N. Y. Supp. 926; and see the brief of Mr. Parker of counsel, Uline v. New York Cent. & H. R. R. Co., 79 N. Y. 178; Wanamaker v. Megraw, 168 N. Y. 125, 131, 61 N. E. 112; Cudlip v. N. Y. Evening Journal Pub. Co., 180 N. Y. 85, 87, 72 N. E. 925; Clifford v. Denver, etc., R. R. Co., 111 App. Div. 513, 516, 97 N. Y. Supp. 707. The only possible objection to be urged against this course is that some ruling on the evidence may occasion surprise to some party to the cause. This consequence can be obviated by an application for a further commission according to the former practice in equity. As there is no jury in this court, and the court is always open by law, no great delay need ensue in an important cause.

After this review of the practice and statutory requirements in respect of testimonial evidence taken by commission for use on the trial of an issue of fact, I shall now proceed to consider the objections interposed to the interrogatories to be annexed to the letters rogatory to be issued out of this court. The single issue for trial in this cause is the status of the infant claiming to be the adopted daughter of the intestate. Was or was not her adoption in Germany valid, effective, and complete? The interrogatories and cross-interrogatories are to be put to the German judge whose court sanctioned the adoption mentioned. That any of the proposed interrogatories or cross-interrogatories are not pertinent to the issue is not apparent to me, and that is all which I shall consider at this time. It may be that some of the evidence sought may not be competent or material when elicited, or even that some of the questions may not be competent; but all such matters should be reserved for the trial, when the evidence comes to be offered and the interrogatories are sought to be read in evidence.

The issue to be determined here is very subtle and novel, and the result of the trial will be of great consequence to the brother of intestate and to the infant. I am not inclined, at this stage of this controversy, to exclude any interrogatory which is or may be even remotely pertinent to the issue, if it is put by interested parties. The witness to be examined is a jurisconsult and foreign judge of distinction. He is sought to be interrogated concerning a solemn judicial act of his own, taken pursuant to the law of Prussia. This act was, and is, of grave consequence to citizens of this state. What course the learned judge will take, or what he may say on his oath when he is examined, I cannot foresee. But that the interrogatories and cross-interrogatories, exhibited, if they relate at all to his judicial action in the premises, are "pertinent," I cannot doubt. All the interrogatories and cross-interrogatories exhibited on the part of the infant or the brother of intestate are pertinent to the issue and should be and are allowed on that score, but with full right reserved to them, or either of them, to take on the trial, or after the return of the commission, any and all such objections to interrogatories, cross-interrogatories, or answers there-

to, or any of them, as they, or either of them, may then see fit or deem proper.

[4] The cross-interrogatories propounded and exhibited on the part of the mother by nature of the infant herein occupy another very distinct position. The mother of the infant, now Mrs. Elly Smith, happens to be also the administratrix herein. As such administratrix she will be protected by the decree of this court, whether distribution be decreed to her own child or to the brother of intestate. As administratrix she has no legal interest in the contention between her child and intestate's brother over the distributive share claimed by either. Her maternal solicitude for her child is not a legal interest in the controversy. The position of the administratrix in respect to the real issue for trial here is passive, and she has no legal right to make herself an actor in that controversy further than to see to the jurisdiction of this court. Her child, alleged by its guardian to have been adopted by the intestate after his marriage to the lady now the administratrix, is, as I am informed, her daughter by her former divorced husband, one Mr. Bleisener. If Mrs. Smith could intervene in this particular controversy between her child and the brother of intestate simply because she is the mother, so could the child's father by nature. There is no more propriety in this administratrix furthering the legal controversy between her child and the intestate's brother than there would be in her former husband's so doing. The objection to the cross-interrogatories propounded and exhibited on the part of the administratrix are sustained, and such cross-interrogatories are disallowed.

In view of my last ruling, the guardian of the infant may have leave, within 10 days after the promulgation of this opinion, to adopt any or all of the cross-interrogatories exhibited on the part of the mother, except the cross-interrogatory numbered 5, and those which are repetitions. Surprise or misadventure to any one concerned in this cause will thus be obviated, and at the same time we shall better preserve the proprieties usual, I hope, in judicial proceedings in this court.

Proceed accordingly.